IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 23, 2014 Session

## CHARTIS CASUALTY COMPANY ET AL. v. STATE OF TENNESSEE

**Appeal from Tennessee Claims Commission**
**No. X2012529 Robert N. Hibbett, Commissioner, Tenn. Claims Commission**
**(Middle Division)**

**No. M2013-00885-COA-R3-CV - Filed July 31, 2014**

Five separate groups of Pennsylvania-domiciled insurance companies filed five separate tax refund claims in which each challenges the imposition of retaliatory insurance premium taxes by the Tennessee Department of Commerce and Insurance pursuant to Tenn. Code Ann. § 56-4-218. The central issue presented is whether Pennsylvania's surcharges or assessments for three Workmen's Compensation funds are imposed upon Tennessee-domiciled insurance companies doing business in Pennsylvania and, therefore, fall within Tennessee's retaliatory insurance premium tax statute. The Tennessee Claims Commission ruled in favor of the state and all of the Pennsylvania insurance companies appealed. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which, ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Brad A. Lampley and Tricia Olson, Nashville, Tennessee, for the appellants, Chartis Casualty Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, and New Hampshire Insurance Company.

Tracy D. Williams, William M. Sneed, Peter D. Edgerton and Lisa E. Schwartz, pro hac vice, Chicago, Illinois, for the appellants, Chartis Casualty Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, and New Hampshire Insurance Company.

Robert E. Cooper, Jr., Attorney General and Reporter, Joseph F. Whalen, Associate Solicitor General, and Jonathan N. Wike, Senior Counsel, for the appellee, State of Tennessee.

John Brister Burns, Warren Davidson Broemel, and John Vinson Arnold, Nashville, Tennessee, as the Amicus Curiae.

## OPINION

The relevant facts of this case and four additional cases brought by separate groups of Pennsylvania-domiciled insurance companies are undisputed and the only substantive variation among all of the claimants' respective statements of facts in support of their respective motions for summary judgment is the respective amounts of the disputed taxes paid under protest for each tax year.[1]

The claimants in this particular case are Chartis Casualty Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, and New Hampshire Insurance Company (collectively "Claimants") are Pennsylvania-domiciled insurance companies authorized to provide property and casualty insurance, including workers' compensation coverage, in Tennessee.[2]

The State of Tennessee, through the Tennessee Department of Commerce and Insurance ("the Department") which administers the imposition and calculation of insurance premium taxes that may be owed the State of Tennessee, is authorized to impose retaliatory taxes on foreign insurance companies doing business in Tennessee under circumstances specified in Tenn. Code Ann. § 56-4-218, Tennessee's retaliatory tax statute. By letters dated November 7, 2008, the Department informed Claimants it was conducting an audit for the years 2005 through 2007. The letters stated that the "issues in this audit are mainly retaliatory in nature." The Department requested Claimants to recalculate their Tennessee retaliatory taxes to include certain Pennsylvania workers' compensation surcharges, file amended premium tax returns, and remit payment of the additional retaliatory taxes.

---

[1]Five separate groups of Pennsylvania-domiciled insurance companies and five separate groups of New York-domiciled insurance companies filed claims in ten separate actions with the Commission, all seeking a refund of retaliatory taxes paid under protest. The ten cases remained separate and all claimants were unified in their positions; the ten cases proceeded concurrently through the Claims Commission and were heard jointly. The cases brought by New York-domiciled insurance companies are referred to as the "New York cases" and those brought by the Pennsylvania-domiciled insurance companies are referred to as the "Pennsylvania cases."

[2]The five Pennsylvania cases, which were jointly briefed and argued on appeal but not consolidated, are: *Chartis Casualty Company et al. v. State*, No. M2013-00885-COA-R3-CV; *American Casualty Company of Reading, Pennsylvania v. State*, No. M2013-00898-COA-R3-CV; *Old Republic Insurance Company et al. v. State*, No. M2013-00904-COA-R3-CV; *Valley Forge Insurance Company v. State*, No. M2013-00897-COA-R3-CV; and *ACE American Insurance Company et al. v. State*, No. M2013-00930-COA-R3-CV.

Claimants disputed the applicability of Tennessee's retaliatory tax statute to the Pennsylvania workers' compensation surcharges, but eventually paid the disputed taxes under protest. The amount paid under protest by Claimants total $464,082, which is the amount at issue in this case. On May 29, 2012, Claimants filed a complaint with the Tennessee Claims Commission ("the Commission") seeking a refund of retaliatory taxes paid under protest for the years 2007 through 2010.

Claimants and the Department filed cross-motions for summary judgment and a hearing was held on January 22, 2013. On March 8, 2013, the Commission issued a final judgment granting the Department's motion for summary judgment and denying Claimants' motion for summary judgment. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. Where the facts are undisputed, this court reviews the grant of summary judgment de novo with no presumption of correctness. *City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997).

## ANALYSIS

### I. TENNESSEE'S RETALIATORY TAX[3]

"[T]he principal purpose of retaliatory tax laws is to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes." *Western & Southern Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 668 (1981).

> Generally, such statutes provide that whenever the laws of a particular state impose greater burdens and limitations upon companies organized in the enacting state, and doing business in such other state, than are imposed by the laws of the enacting state upon foreign companies doing business in that state,

---

[3]The author of this and the opinions in the other four Pennsylvania cases acknowledges that much of this opinion is taken from the excellent opinions authored by Judge Andy D. Bennett in the five related New York cases, which are filed contemporaneous with these opinions. This was done to minimize the possibility of misinterpretation of our rulings and in the interest of judicial economy.

then the same burdens and prohibitions imposed by the foreign state will be imposed by the enacting state upon such companies of the foreign state.

43 AM. JUR. 2D *Insurance* § 54 (2014).

Tennessee has enacted a retaliatory tax law, Tenn. Code Ann. § 56-4-218(a), which states in pertinent part:

When, by the laws of any other state or foreign country, any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon Tennessee insurance companies doing business in the other state or foreign country, or upon their agents in the other state or foreign country, that are in excess of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon the insurance companies of the other state or foreign country doing business in this state, or that might seek to do business in this state, or upon their agents in the state, so long as the laws continue in force, the same premium or income or other taxes, or fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions and restrictions of whatever kind shall be imposed upon the companies of the other state or foreign country doing business in this state, or upon their agents in this state.

Consistent with the United States Supreme Court in *Western and Southern Life Insurance Company*, the Tennessee Supreme Court has stated:

[t]he legislative purpose of the retaliatory insurance tax statute, as noted above, is to protect Tennessee insurance companies by encouraging foreign jurisdictions not to impose heavier burdens on Tennessee companies than Tennessee imposes upon their companies who come here to do business.

*Republic Ins. Co. v. Oakley*, 637 S.W.2d 448, 451 (Tenn. 1982).

Thus, the issue under the retaliatory tax statute is whether any fees, charges, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon Tennessee insurance companies doing business in Pennsylvania that are in excess of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations,

prohibitions or restrictions imposed upon the insurance companies of Pennsylvania insurance companies doing business in Tennessee.

4

## II. THE PENNSYLVANIA SURCHARGES AT ISSUE

There are three Pennsylvania fees or surcharges at issue. The Pennsylvania surcharges identified by the Department as includable in the retaliatory tax computation are:

(1)    The Workmen's Compensation Administration Fund. The Administration Fund surcharge covers the operating and administrative expenses of the Pennsylvania Department of Labor and Industry in the direct administration of the Pennsylvania Worker's Compensation Act; it is codified at 77 Pa. Cons. Stat. § 1000.2;

(2)    The Subsequent Injury Fund. The surcharge provides a fund for supplementary coverage for previously injured workers for a subsequent loss – for one having suffered a previous similar loss; it is codified at 77 Pa. Cons. Stat. § 516; and

(3)    The Workmen's Compensation Supersedeas Fund. The supersedeas fund surcharge provides a fund that reimburses insurers for payments of compensation that are later determined to not be payable; it is codified at 77 Pa. Cons. Stat. § 999.

The Department maintains that each of these surcharges constitutes a fee, fine, penalty, license, deposit requirement or other obligation, prohibition or restriction that is imposed upon Tennessee insurance companies doing business in Pennsylvania which, in the aggregate, are in excess of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon Pennsylvania domiciled insurance companies doing business in Tennessee.

Claimants disagree, insisting that the charges are imposed upon the policyholders, who ultimately pay the charges, not the insureds. Claimants principally rely on 71 Pa. Cons. Stat. § 578 in making this argument. The statute reads:

> Effective July 1, 1998, the assessments for the maintenance of the Subsequent Injury Fund, the Workmen's Compensation Supersedeas Fund and the Workmen's Compensation Administration Fund under sections 306.2, 443 and 446 of the act of June 2, 1915 (P.L. 736, No. 338), known as the "Workers' Compensation Act," shall no longer be imposed on insurers but shall be imposed, collected and remitted through insurers in accordance with regulations promulgated by the Department of Labor and Industry.

The enactment of 71 Pa. Cons. Stat. § 578 notwithstanding, the Pennsylvania Legislature has neither repealed nor amended 77 Pa. Cons. Stat. § 1000.2 (the Workmen's Compensation Administration Fund), § 516 (the Subsequent Injury Fund), or § 999 (the

Workmen's Compensation Supersedeas Fund), the assessments for which are expressly imposed on the insurance companies, not the insured employers. Not to be deterred, Claimants insist the Pennsylvania legislature intended to place the underlying liability and economic burden squarely upon the policyholders through the enactment of 71 Pa. Cons. Stat. § 578. Stated another way, Claimants imply that these three specific statutes were repealed by implication by 71 Pa. Cons. Stat. § 578. The Pennsylvania Code, which is similar to that of Tennessee provides:

> (a) Whenever a statute purports to be a revision of all statutes upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statute, such statute shall be construed to supply and therefore to repeal all former statutes upon the same subject.
>
> (b) Whenever a general statute purports to establish a uniform and mandatory system covering a class of subjects, such statute shall be construed to supply and therefore to repeal pre-existing local or special statutes on the same class of subjects.
>
> (c) In all other cases, a later statute shall not be construed to supply or repeal an earlier statute unless the two statutes are irreconcilable.

1 Pa. Cons. Stat. Ann. § 1971 (West).

However, the repeal of statutes by implication is not favored in Pennsylvania.[4] *See Com. v. Milano*, 446 A.2d 325, 327 (Pa. Superior Ct. 1982) ("Because implied repeals are not favored in the law, the legislative intent to impliedly repeal a statute by enacting another must be clearly shown.") (citing *In re Newton's Estate*, 47 A.2d 229, 231 (Pa. 1946); *Girard Trust Co. v. Philadelphia*, 9 A.2d 883, 884 (Pa. 1939); *First Nat'l Bank of Millville v. Horwatt*, 162 A.2d 60, 62 (Pa. Superior Ct. 1960)); *see also Gilbert v. Lebanon Valley St. Ry.*, 150 A. 638, 639 (Pa. 1930) ("Implied repeals are never favored. To justify the court in holding that one repeals the other, there must be a clear repugnancy between them."); *Commonwealth v. Meyers*, 139 A. 374, 379 (Pa. 1927) ("Repeals by implication are not favored"); *Commonwealth v. Provident Trust Co.*, 134 A. 377, 378 (Pa. 1926) ("Repeals by implication are not favored, and, before it is so held, the repugnance between the two acts must be total."); *In re Somerset & Stoystown Rd.*, 74 Pa. 61, 62-63 (Pa. 1873). This point was emphasized by the Pennsylvania Supreme Court in another case:

---

[4]Tennessee also does not favor repeal of statutes by implication. *See Oliver v. King*, 612 S.W.2d 152, 154 (Tenn. 1981).

A statute may be repealed by the legislature either expressly or by implication. "An implied repeal is one which takes place when a new law contains provisions which are contrary to, but do not expressly repeal, those of a former law." It is a question of legislative intent, but since repeals by implication are not favored in law, the intent must be clear. Yet "an intent to repeal inconsistent provisions of an earlier act may be inferred from the fact that provisions of the two acts are so repugnant and irreconcilable as to render it impossible for both to stand[.]"

*In re Newton's Estate*, 47 A.2d 229, 230 (Pa. 1946) (internal citations omitted).

We believe another Pennsylvania statute makes clear the fact that the insurance companies, not the insured employers, are ultimately responsible for the surcharges at issue. This is evident from reading 34 Pa. Code § 121.33(4), which expressly provides that "*The failure of an insurance carrier to receive payment from an insured employer does not limit an insurance carrier's responsibility to collect and timely remit to the Bureau the total amount calculated* under subsection (a)(2)." (emphasis added). Thus, the insurance companies are ultimately liable for the assessments at issue due to the fact the Pennsylvania Legislature compels the insurance companies to pay the assessments.

Another reason we find unpersuasive the argument that the liability for these assessments has been lifted from the financial shoulders of the insurance companies and placed solely on those of the insured employers is the action of the Pennsylvania Bureau of Workers' Compensation following the enactment of 71 Pa. Cons. Stat. § 578. When the 1998 amendments went into effect, the Bureau informed the insurance companies that the amendments "do not require the creation of any new forms," citing 29 Pa. B. 2649, Doc. No. 99-814 (May 14, 1999). Therefore, this action by the Bureau belies the argument that the burden was lifted from the insurance companies and placed solely on the shoulders of the insured employers. As the Department noted in its brief,

This statement reflects the fact that 71 Pa. Cons. Stat. § 578 did not create any new taxpayers or tax procedures. The Bureau's way of implementing this provision was to use the rule that it was required to adopt under the amended law so as to revert to business as usual, so that the changes are assessed against and collected from insurers virtually as before the amendment to the statute was enacted.

By reading the relevant Pennsylvania statutes in *pari materia*, we see numerous sections that continue to impose the assessments on the insurers, not the policyholders. These difficult to ignore sections include 77 Pa. Cons. Stat. § 1000.2(b) which states that the

Workmen's Compensation Administration Fund is "maintained by no more than one (1) annual assessment . . . on insurers"; 77 Pa. Cons. Stat. § 517 which states that the Subsequent Injury Fund is "maintained . . . by assessing each insurer"; and 77 Pa. Cons. Stat. § 999(b) which states that the Supersedeas Fund is "maintained by annual assessments on insurers." Each of these fund assessments by Pennsylvania is a burden that every workers' compensation carrier must bear that insured employers in Pennsylvania; thus, each assessment constitutes a burden that is imposed on a Tennessee insurer who provides such coverage in Pennsylvania.

The "purpose of the retaliatory insurance tax statute . . . is to protect Tennessee insurance companies by encouraging foreign jurisdictions not to impose heavier burdens on Tennessee companies than Tennessee imposes upon their companies who come here to do business." *Republic Ins. Co. v. Oakley*, 637 S.W.2d at 451. Pennsylvania has imposed a heavier burden on Tennessee insurance companies than Tennessee has imposed on Pennsylvania insurance companies; thus, the Department's decision to impose the retaliatory insurance premium tax on Claimants was proper.

III. DUE PROCESS

Claimants maintain that the Department changed its position as to charges to be included in computation of retaliatory taxes without notice or a hearing; while the Department argues to the contrary.

Claimants argue that Pennsylvania laws providing for the surcharges at issue have been on the books for years, that Tennessee's retaliatory tax statute was amended in 1945 and has remained "largely unchanged for 60 years," but, "[n]otwithstanding the longevity of these laws in both states, in 2009, the Department abruptly reversed its long-standing position of not assessing retaliatory taxes against the Pennsylvania surcharges."

Claimants compare the circumstances of their five cases to *New England Mutual Life Insurance Company v. Reece*, 83 S.W.2d 238 (Tenn. 1935), in which the definition of "gross premium receipts" was at issue. Since 1897, the commissioner had interpreted the term as allowing deductions for dividends, *Reece*, 83 S.W.2d at 238, but in 1932, the commissioner determined that the term did not include deductions for dividends. *Id.* Our Supreme Court found that each side had legal authority from other states to support its position, but that "the weight of the decided cases rather favors the insurance company." *Id.* at 240. The Court was also influenced by the length of time the interpretation had remained in place combined with the fact that the legislature had reenacted the tax in numerous revenue bills since 1897 "without change of phraseology." *Id.* at 241. "When the Legislature re-enacts without change a statute that has been construed by officers charged with its enforcement, and that official

8

construction is within the knowledge of the Legislature, such action of the Legislature is an adoption of that construction." *Id*. Thus, the court ruled that the 1897 interpretation of the statute was the correct one. *Id*. at 242.

It appears to us that the Claimants' cases are fundamentally different from *Reece*. One important difference is that the retaliatory tax is self-reported: "Each foreign insurance company doing business in this state shall furnish, over the signature and oath of its responsible officers, the necessary information for the computation of the taxes upon forms prescribed by the commissioner." Tenn. Code Ann. § 56-4-218(a) (2014). As a result of an audit, which included a review of the Pennsylvania tax structure, the Department became aware that not all Pennsylvania insurance companies were reporting all the required assessments. The state presented the affidavit of the Examiner-In-Charge of the Premium Tax Unit of the Department's Insurance Division, Mr. Mark Brothers, who stated that he was not aware of any policy that excluded these assessments from the state burden for retaliatory tax purposes. Thus, rather than changing its position, the Department became aware of new information that required recalculation of the tax. Just because the Department did not collect the tax before does not mean it cannot be collected now. Failure to collect a tax "cannot work an estoppel against the State." *Porter Brown Limestone Co., Inc. v. Olson*, 648 S.W.2d 242, 244 (Tenn. 1982); therefore, we find no due process violation. The State assessed a tax and Claimants challenged the assessment; that is the process Claimants are due.

Claimants also maintain that the Department's action violated the Uniform Administrative Procedures Act ("UAPA"): "State executive departments must adhere to those two fundamental precepts of the UAPA – notice and a public hearing – in formulating and implementing new regulatory policies, rules and standards." The Department's claim that it did not know of the surcharges, say Claimants, "rings hollow . . . given that both the Pennsylvania Surcharges and Tennessee's retaliatory tax statute have been the law for many decades." It may be that the Department has been lax. It may be that the Department should have become aware of the surcharges sooner, even though they are not placed together in the Pennsylvania code. The action of the Department, however, cannot be said to be based on a new policy or rule, but rather on new information – the existence of the surcharges. The use of new information that alters the incidence and amount of a preexisting tax is not the equivalent of a new rule or policy. We find no violation of the UAPA.

IV. FULL FAITH AND CREDIT

Article IV, Section 1 of the United States Constitution, the Full Faith and Credit Clause, states that, "Full Faith and Credit shall be given in each State to the public acts, Records and judicial Proceedings of every other State." Claimants argue that the Department is misinterpreting Pennsylvania law and failing to accord full faith and credit to

Pennsylvania's public acts in the process:

> The Department's current position of assessing retaliatory taxes against the Surcharges fails to accord full faith and credit to Pennsylvania's public acts. The Department seeks, instead, to impose its own interpretation as to the nature of the Surcharges and redefine the party upon whom the surcharges are imposed. To allow the Department to rewrite Pennsylvania law violates the constitutional requirement of the Full Faith and Credit Clause.

Because Tenn. Code Ann. § 56-4-218(a) requires that the charges be imposed "by the laws of any other state," we identified and applied the relevant Pennsylvania law; however, whether we misconstrued the law of Pennsylvania does not necessarily constitute a violation of the Full Faith and Credit Clause. As the United States Supreme Court explained:

> [t]o constitute a violation of the Full Faith and Credit Clause . . . , it is not enough that a state court misconstrue the law of another State. Rather, our cases make plain that the misconstruction must contradict law of the other State that is clearly established and that has been brought to the court's attention.

*Sun Oil Co. v. Wortman*, 486 U.S. 717, 730-31 (1988); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 834-35 (1985); *W. Life Indem. Co. of Ill. v. Rupp*, 235 U.S. 261, 275 (1914) ("[I]t is settled that where, in a state court, the validity of an act of the legislature of another state is not in question, and the controversy turns merely upon its interpretation or construction, no question arises under the 'full faith and credit' clause of the Federal Constitution."). Accordingly, there is no violation of the Full Faith and Credit Clause in this case.

## V. EQUAL PROTECTION

Claimants also argue a violation of equal protection. In *Western and Southern Life Insurance Company v. State Board of Equalization of California*, 451 U.S. at 668, the United States Supreme Court decided whether California's retaliatory tax violated the Equal Protection Clause of the Fourteenth Amendment by applying a rational basis test:

> In determining whether a challenged classification is rationally related to achievement of a legitimate state purpose, we must answer two questions: (1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?

The Alaska Supreme Court succinctly described the Supreme Court's holding in *Western and Southern* as follows:

> In *Western & Southern*, the United States Supreme Court upheld California's retaliatory tax as constitutional under the federal Equal Protection Clause. In upholding the statute, the Supreme Court reasoned that promotion of domestic industry by deterring barriers to interstate business is a legitimate state purpose and the mere fact that California was trying to promote its insurance industry by influencing the policies of other states through retaliatory taxation did not render the purpose illegitimate. It further concluded that it was reasonable for California to suppose that its retaliatory taxes would induce other states to lower the burdens on California insurers in order to spare their domestic insurers the cost of the retaliatory tax in California.

*Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1123 (Alaska 2007) (footnotes omitted).

The same reasoning applies to Tenn. Code Ann. § 56-4-218(a); therefore, it does not violate the Equal Protection Clause.

### VI. COMMERCE CLAUSE AND UNIFORMITY CLAUSE

Claimants assert that the tax violates the Commerce Clause. The Supreme Court in *Western and Southern*, 451 U.S. at 655, rejected the claim that California's retaliatory tax violated the Commerce Clause, holding that "the McCarran-Ferguson Act removes entirely any Commerce Clause restriction upon California's power to tax the insurance business."

Claimants also make an argument based on the Uniformity Clause, found in Article I, Section 8 of the United States Constitution.[5] They candidly recognize that this argument is inconsistent with *Prudential Insurance Co. v. Benjamin*, 328 U.S. 408 (1946) and *Western & Southern*, 451 U.S. 648. We are bound by the precedents established by the United States Supreme Court interpreting the federal constitution. *Utley v. Tenn. Dep't of Corr.*, 118 S.W.3d 705, 715 (Tenn Ct. App. 2003). Therefore, we reject Claimants' Uniformity Clause argument.

---

[5]The Uniformity Clause of Article I, Section 8 of the United States Constitution states: "all Duties, Imposts and Excises shall be uniform throughout the United States."

## CONCLUSION

We affirm the decision of the claims commission in all respects. Costs of appeal are assessed against the claimants jointly and severally, for which execution may issue if necessary.

_____
FRANK G. CLEMENT JR., JUDGE